# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHWESTERN DIVISION

| | |
|---|---|
| MARY P. MOSES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 20-05114-CV-SW-BP-SSA |
| | ) |
| KILOLO KIJAKAZI,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## ORDER AND OPINION AFFIRMING
## COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff's appeal of the Commissioner of Social Security's decision denying her application for Disability Insurance Benefits and Supplemental Security Income. For the following reasons, the Commissioner's decision is **AFFIRMED**.

## I. BACKGROUND

Plaintiff Mary Moses was born on March 24, 1965, and has a GED. (R. at 31.) On November 14, 2018, Plaintiff filed an application for Disability Insurance Benefits and Supplemental Security Income, alleging that she became disabled on September 27, 2018. (R. at 30.) Prior to the alleged onset date, Plaintiff had worked as a cashier checker. (R. at 19.)

After holding a hearing, an Administrative Law Judge ("ALJ") found that Plaintiff suffers from degenerative joint disease of the right knee, chronic obstructive pulmonary disease ("COPD"), and headaches. (R. at 13.) Additionally, the ALJ found that Plaintiff had non-severe bipolar and post-traumatic stress disorder. (R. at 14.) However, the ALJ found that these impairments were not medically equal in severity to one of the listed impairments in 20 C.F.R.

---

[1] Kilolo Kijakazi was appointed Acting Commissioner of Social Security during the pendency of this case and is automatically substituted as the Defendant pursuant to FED. R. CIV. P. 25(d).

Part 404. (R. at 16.) The ALJ then turned to Plaintiff's Residual Functional Capacity ("RFC"). The ALJ found that Plaintiff could perform light work, except that she could lift and carry 20 pounds occasionally and 10 pounds frequently, and stand, walk, or sit up to six hours per workday, could only occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs, and must avoid climbing ladders, ropes, or scaffolding and concentrated exposure to temperature extremes, irritants, and hazards. (R. at 17.)

In light of these limitations, the ALJ found that Plaintiff could return to her past work as a cashier checker, both as it is generally performed in the national economy and as Plaintiff actually performed it. (R. at 19.) Consequently, the ALJ found that Plaintiff was not disabled. (*Id*.)

Plaintiff has now appealed the ALJ's determination that she was not disabled, arguing that it was not supported by substantial evidence. The Commissioner opposes Plaintiff's appeal. The Court resolves these issues below.

## II. DISCUSSION

The Court has a limited ability to revisit the conclusions of an ALJ. Specifically, "review of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion." *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Although the substantial evidence standard is favorable to the Commissioner, it requires the Court to consider evidence that fairly detracts from the Commissioner's decision. *E.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). But if the Court finds substantial evidence to support the Commissioner's decision, it cannot reverse the decision simply because there is also substantial evidence that might have supported the opposite outcome. *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015). With these principles in mind,

the Court addresses each of Plaintiff's arguments in turn to determine whether they show that the Commissioner's decision was not supported by substantial evidence.

1. **Plaintiff's Mental Health Impairments**

Plaintiff's first argument is that the ALJ erred in determining that Plaintiff's mental health impairments—namely, her bipolar disorder and post-traumatic stress disorder, which contributed to her general depression and anxiety—were nonsevere. (Doc. 16, pp. 8–13.) "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). To assess whether alleged mental impairments are severe, an ALJ must determine how they affect a claimant's ability in four functional areas: the ability to "[u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00E.

Here, the ALJ found that Plaintiff's limitation in each of these areas was no more than mild. (R. at 14.) Although Plaintiff complained in her testimony that she "cr[ies] a lot" and struggles to "understand things," (R. at 45), the ALJ cited evidence that Plaintiff's mental health problems did not severely limit her functional abilities. For instance, the ALJ pointed out that Plaintiff has not required any aggressive mental health treatment, and only began seeing a mental health counselor *after* filing her application for disability benefits. (R. at 390.) Moreover, Plaintiff's mental health evaluations are consistently normal; for example, in a meeting with her counselor in November 2019, Plaintiff "noted that overall she's doing 'ok' and didn't have anything she wanted to talk about." (R. at 367.) Plaintiff's daily activities also appear inconsistent with severe limitations to her mental functions; for instance, Plaintiff performs household chores like washing dishes, cleaning laundry, and vacuuming, and routinely goes to church and attends

social functions. (R. at 46–48.) Moreover, as the ALJ pointed out, the Record is replete with medical assessments indicating that Plaintiff's mood and cognition are normal. (*E.g.,* R. at 246, 272, 405, 421, 435.)

Plaintiff points to some evidence in the record that would support the opposite conclusion—mostly reports to medical professionals that Plaintiff felt anxious and depressed, (*e.g.,* Doc. 16, p. 10)—but "[i]f, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Heino v. Astrue*, 578 F.3d 873, 879 (8th Cir. 2009) (citation omitted).

Independently, as Defendant points out, once an ALJ has identified one severe impairment, his designation of other impairments as "nonsevere" does not affect his ultimate findings—the ALJ is required to consider the effects of *all* of a claimant's impairments, whether "severe" or not, in assessing a claimant's RFC. 20 C.F.R. § 404.1523(c). Plaintiff does not identify any specific limitation from her mental impairments that the ALJ should have, but did not, include in the RFC. Consequently, any error in failing to designate Plaintiff's mental impairments as "severe" is harmless. For these reasons, the ALJ's designation of Plaintiff's mental impairments as nonsevere is not a reason for reversal.

   2. **Plaintiff's RFC**

Plaintiff next argues that the ALJ failed to support his determination that Plaintiff could perform light work, with some additional limitations. (Doc. 16, p. 15.) "[T]he determination of a claimant's RFC at the administrative hearing level is the responsibility of the ALJ alone and is distinct from a medical source's opinion," and the ALJ can identify the limitations in the RFC by "[v]iewing the record as a whole." *Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013) (citing

20 C.F.R. § 404.1546(c)). In particular, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

Here, the ALJ considered each of the limiting conditions Plaintiff alleged and discussed the medical evidence on each condition. (R. at 17–18.) With regard to Plaintiff's pain in her right knee, the ALJ cited ample evidence that Plaintiff exhibited a relatively normal gait and range of motion in her extremities, and that Plaintiff's knee pain was significantly alleviated with a cortisone injection. (*E.g.,* R. at 334; 338; 354; 364; 404; 414.) With respect to Plaintiff's COPD and alleged shortness of breath, the ALJ cited treatment notes indicating that the disease is "mild," and observed that Plaintiff's oxygen saturation and lung function were consistently normal and she never required supplemental oxygen. (*E.g.,* R. at 323; 334; 337 (noting "mild" COPD); 342; 344; 406.) Concerning Plaintiff's headaches, the ALJ cited treatment notes indicating that Plaintiff routinely denies having headaches to her healthcare providers, or downplayed the frequency and severity of her headaches. (*E.g.,* R. at 246; 272; 334; 405; 421; 435.)

Plaintiff appears to complain that (1) there is evidence supporting a conclusion that her limitations were more severe than the ALJ found and (2) the ALJ did not cite any evidence from a specific medical provider to support each of the restrictions he imposed. (Doc. 16, pp. 16–17.) However, it was *Plaintiff's* burden to prove any limitation she wished the ALJ to include in the RFC, *e.g., Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005); and even now, Plaintiff does not point to any specific limitation supported by the Record that she believes the ALJ failed to include in the RFC. (*E.g.,* Doc. 16, p. 16.)

Finally, Plaintiff suggests that the ALJ should have further developed the Record, seemingly to ask a medical professional to assess Plaintiff's RFC. (Doc. 18, p. 6.) "While an ALJ does have a duty to develop the record, this duty is not never-ending and an ALJ is not required to

disprove every possible impairment. The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011) (internal citation omitted). Here, the medical evidence cited above is substantial evidence to support the ALJ's evaluation of Plaintiff's limitations. Therefore, Plaintiff's RFC was supported by substantial evidence, and reversal is not warranted on this ground.

### III. CONCLUSION

For the foregoing reasons, the Court finds that substantial evidence supports the ALJ's determination of Plaintiff's RFC. Consequently, the Commissioner's final decision denying benefits is **AFFIRMED**.

**IT IS SO ORDERED.**

/s/ Beth Phillips
BETH PHILLIPS, CHIEF JUDGE
**DATE**: November 1, 2021    UNITED STATES DISTRICT COURT